■ Adrian T., an Infant, by His Mother and Natural Guardian, Filiberta T., et al., Respondents, v Millshan Realty Co., LLC, et al., Appellants. [47 NYS3d 20]—

Order, Supreme Court, Bronx County (Fernando Tapia, J.), entered April 19, 2016, which denied defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.

Defendants established prima facie that exposure to lead did

not cause the infant plaintiff's (Adrian) cognitive deficits (*see Veloz v Refika Realty Co.*, 38 AD3d 299 [1st Dept 2007], *lv denied* 9 NY3d 817 [2008]). The record shows that Adrian, who was born in April 1998, had minimal blood lead levels of two to four micrograms per deciliter (ug/dl) between March 1999 and March 2000. He had a single elevated blood lead level of 13 ug/dl in February 2002. Defendants relocated Adrian's family, and, by May 31, 2002, had abated the lead condition. On that date, Adrian's blood lead level was back down to four ug/dl; it was measured at three ug/dl in September 2002 and again in November 2005. The record also shows that Adrian had undisputed speech and language deficits from infancy, well before his first known exposure to lead paint. Adrian continued to receive speech and language therapy and individualized education programs into high school, where he achieved a generally strong academic record, including two years of honors classes. Defendants submitted an expert pediatric neurologist's report, supported by specifically referenced scientific studies, showing that no peer-reviewed study had found a decrement from lead in children with preexisting cognitive deficits, i.e., children with "asymptomatic lead exposure."

Plaintiffs failed to raise a triable issue of fact in opposition (*see id.*). Their neuropsychologist's report carefully tracks Adrian's lifelong cognitive deficits but does not show that any continuing deficits are attributable to his brief exposure to lead in early 2002. The neuropsychologist cites no scientific study to support her assertion that Adrian's exposure to lead "created greater difficulties for him than he would have had . . . if he had not been exposed to lead" (*see Bygrave v New York City Hous. Auth.*, 65 AD3d 842, 847 [1st Dept 2009]).

The report by plaintiffs' pediatric neurologist is also insufficient to raise an issue of fact. The neurologist's core opinion was that Adrian's exposure to lead caused a nearly 10-point drop in his IQ. However, the neurologist failed to show that Adrian's IQ changed at all. He did not measure Adrian's IQ himself; he relied on plaintiffs' neuropsychologist's report. However, he does not cite to any IQ measurement taken before the neuropsychologist examined Adrian, in October 2015, and indeed the record contains no baseline measurement.

Nor did the neurologist identify any scientific studies in support of his opinion. While he listed 11 articles at the end of his report, he did not summarize any of the articles' findings with any particularity, or correlate any of the findings in the articles to any of his own findings. Moreover, defendants' neurologist pointed out that all the articles cited by plaintiff's neurologist

were population-based studies, and explained that Adrian's average recorded blood lead levels of 4.9 ug/dl were so low that he would have been included in the control groups of those studies. Concur—Sweeny, J.P., Renwick, Mazzarelli, Manzanet-Daniels and Feinman, JJ.